[No. 38722.    Department Two.    August 31, 1967.]

TOSHOKU, LTD., *Respondent and Cross-appellant,* v.
MAURICE E. BLACKMAR *et al., Appellants.**

*Holman, Marion, Perkins, Coie & Stone* and *Theodore J. Collins,* for appellants.

*Joseph C. McKinnon,* for respondent and cross-appellant.

LANGENBACH, J.†—This is a suit based upon two causes of action alleging two separate breaches of a contract for the sale and delivery of logs, as well as upon a counterclaim for damages resulting from an alleged slander in Japan. After a protracted trial to the court, recovery was allowed on the first cause of action and the second was dismissed. The counterclaim for slander was dismissed on the ground that the law of Japan was neither pleaded nor proved. The defendant has appealed and the plaintiff has cross-appealed.

The facts found by the trial court are not seriously in dispute. Plaintiff is a Japanese importing corporation. It desired to import logs into Japan for purposes of resale. It contacted a Japanese broker who had previously had business relations with defendant. The defendant is a very ex-

*Reported in 431 P.2d 599.

†Judge Langenbach is serving as a judge pro tempore of the Supreme Court pursuant to Art. 4, § 2(a) (amendment 38), state constitution.

perienced log buyer and exporter with many years of experience in dealing with Japanese firms.

In March 1963, negotiations were commenced whereby plaintiff agreed to buy some 5-million feet of primarily hemlock logs (the entire cargo of a ship) which were to be furnished free alongside ship by defendant. At first, the contract provided that these logs would be scaled by one Downing whose inspection certificate would be final as to grading, size and scaling. Later, due to the substitution of another vessel for the one first sought to be chartered, this provision was changed at the insistence of the new ship. This change required that the logs be scaled by the Pacific Log Inspection Bureau (P.L.I.B.), described by its secretary-manager as an independent organization favoring neither shipper, buyer nor carrier, which is sought for its impartial log scaling. In a finding of fact to which no error is assigned, the trial court found that:

> The insistence of the steamship company upon a P.L.I.B. certificate, rather than an individual certificate of Vernon L. Downing, and the subsequent conduct of the parties hereto, constituted a modification of the agreement between plaintiff and defendant as to the certificates of Vernon L. Downing final as to scaling. (Finding of fact No. 52.)

As a matter of fact, Downing did the major portion of the scaling of these logs for P.L.I.B., and signed its official certificates. His qualifications as an expert and experienced scaler are admitted. The court found that in this case he had done his honest best. In scaling the logs in question he was subject to the sole supervision of P.L.I.B. Part of the logs were scaled by three other scalers (admittedly competent) whose results were certified by Downing for P.L.I.B.

After the logs were scaled and loaded aboard the vessel, the P.L.I.B. certificates (exhibit 1) were signed by Downing and delivered to the ship. The freight was computed therefrom and accordingly paid on the entire volume of logs shipped.

However, defendant did not compute the price for the logs from these certificates. For reasons which will shortly

be discussed, defendant had his office secretary refigure Downing's scale totals on new forms to simulate Downing's actual scale. (exhibit 2). She increased the figures approximately 12 per cent. Using these new figures defendant collected payment for the logs from plaintiff's letter of credit, previously authorized for defendant's convenience in this transaction. The first cause of action alleged a breach of contract resulting from this overpayment. Recovery was allowed and defendant brings error. Error is contended essentially to inhere in finding of fact No. 10 (which error is asserted also to infect findings of fact Nos. 18, 27, 28 and 33). Finding of fact No. 10 stated:

> The agreement provided that payment was to be based on inspection certificates of Vernon J. [sic] Downing which were to be taken as final as to grading, size and scaling. The certificates signed by Mr. Downing, as appears in Exhibit 1, were such certificates although Mr. Downing was employed by P.L.I.B. to do such scaling. The parties by their conduct modified the agreement to permit scale certificates of Messrs. Kling, Kerrone and Pullar to be similarly final as to scaling of the portion of the shipment scaled by those persons rather than by Mr. Downing.

Appellant argues that the parties agreed that "Downing certificates," signed by Downing, would be final as to the scaling. He states that even though the agreement was modified to provide for "P.L.I.B. certificates" signed by Downing, nonetheless, under the agreement "Downing certificates" signed by Downing were the only certificates which were final as to scaling. The argument appears to be that after the agreement was modified, *no* scaling certificates existed which were final between the parties. Merely, therefore, to prove that defendant drew money against altered documents would not prove that defendant overcharged plaintiff. Appellant urges, in short, that by substituting P.L.I.B. certificates for Downing certificates, the parties intended to eliminate an essential element of the contract, namely, the basis upon which the quantity of logs was to be determined.

The trial court, by finding that the P.L.I.B. certificates were final between the parties as to scaling, did no more than find that those certificates were to serve the same purpose as the Downing certificates for which they were substituted. With this conclusion, which is supported by reason, the canons of construction and the record in this case, we concur.

We turn now to the second cause of action for breach of contract which was dismissed by the trial court. There exists in the log exporting business a certain trade practice known by the Japanese slang term "oshikoku." As found by the trial court,

> "Oshikoku" is a custom relating to shipments of logs to Japan which has the tacit approval of some steamship lines. Shipments of logs are accomplished with a reduction under what would normally be the cost of freight from the exporting company to Japan by delivery to the steamship, and acceptance by it, of informal certificates showing a smaller volume than the volume found by the professional scaler who actually scaled the logs. Ordinarily, there is only one scaling of the logs, with actual measurement. (Finding of fact No. 4.)

The log scale which is given the ship usually reflects 10 per cent less than actual scale, thus affording the buyer a 10 per cent reduction in freight charges.

In this case, the ship which defendant procured for plaintiff refused to accede to "oshikoku"; it insisted that the scale submitted to it be certified by P.L.I.B. Plaintiff asserted that defendant never notified it that the ship would not oshikoku the freight and had demanded P.L.I.B. certificates.

Nonetheless, defendant (as found by the trial court in an undisputed finding) "guaranteed to provide 10% oshikoku on freight." While he struck the provision from the contract, he personally guaranteed that plaintiff would receive such a freight reduction. In a letter to plaintiff he wrote:

> We have also eliminated the oshikoku. We do not like to see this in a contract. We guarantee this is the basis of the sale and that is the way it will be done, but just dislike anything like this in a contract.

But the ship had refused to accept anything but a true scale certified by P.L.I.B. Therefore, defendant submitted that P.L.I.B. scale to the ship and then had his secretary (who never saw the logs) prepare a simulated scale showing approximately 12 per cent *more* log volume than that shown by the P.L.I.B. scale. This simulated scale was then used, as indicated above, to justify defendant's payment, and when compared with the P.L.I.B. scale, it seemed to reflect that the buyer had received a 12 per cent saving on freight.

Plaintiff, in its second cause of action, sued for an amount equal to the freight reduction it would have received had defendant fulfilled his guarantee. The trial court dismissed this cause of action.

In its oral decision, but not in a finding of fact, the court indicated its opinion that the defendant's purposely simulated scale (exhibit 2) reflected the actual amount of logs delivered. It felt, therefore, that the guaranteed freight reduction had in fact been provided. Nevertheless, the court entered a finding that, if its decision on the second cause of action were reversed, the dollar value of the guaranteed freight reduction was $20,639.40, and that defendant has paid no part of that sum to plaintiff. (We find no merit in defendant's assignment of error to this finding of fact. It involves a purely arithmetical calculation.)

We have studied the arguments of counsel, the statement of facts and the exhibits in great detail. We conclude that if the trial court had entered a finding of fact that the simulated scale certificates reflected actual volume shipped, we would be unable to say that the finding was supported by substantial evidence. Although not found as a fact, this belief was the basis for the trial court's dismissal of the second cause of action. We conclude that that dismissal was an error. Perhaps anticipating our conclusion in this regard, the defendant, although he won on this point below, assigned error to the trial court's failure to dismiss the second cause of action because the agreement was contrary to public policy. (Defendant also assigned error to a portion

of a finding describing the practice of oshikoku which we find supported by the evidence.) The basis for the public policy argument is that an agreement which requires deceiving a third person (here the steamship company) is contrary to public policy. However, this argument ignores the facts that the steamship company in this case was approached on the subject of oshikoku, refused to be a party to it, demanded the scale be certified, not by defendant's employee but by an independent organization, and saw its demands fulfilled. The ship simply refused to oshikoku the freight. Defendant's subsequent written guarantee of a 10 per cent freight reduction did not affect it in the least.

We sustain plaintiff's cross-appeal from the court's finding that the defendant performed his promise to provide oshikoku on the freight.

■ Defendant, it will be recalled, counterclaimed for a slander alleged to have occurred in Japan. This claim was dismissed under the trial court's ruling that while Japanese law applied, it was neither pleaded nor proved. Defendant assigns error to this ruling, and alternatively to the ruling that the court could not presume the law of Japan to be the same as the law of Washington. We affirm the dismissal of the counterclaim for slander. The applicable foreign law, that of Japan, was neither pleaded nor proved. And, as stated in *Philp v. Macri,* 261 F.2d 945, 948, 75 A.L.R.2d 523 (9th Cir. 1958):

> Where one country's judicial system is based on the Common Law and the other's on the Civil Law, both systems having been modified by statutory changes, there is little to recommend the employment of a presumption that the law of one is the same as the law of the other.

The trial court is instructed to enter a judgment for plaintiff upon the second cause of action in the sum of $20,639.40. In all other respects the judgment is affirmed.

FINLEY, C. J., DONWORTH, HUNTER, and NEILL, JJ., concur.

———————

November 3, 1967. Petition for rehearing denied.